f**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

─────────────────────────────

MICHAEL B.,

                                        Plaintiff,

        v.

                                                    No. 3:19-CV-776
                                                        (CFH)
ANDREW SAUL,
Commissioner of Social Security,

                                        Defendant.

─────────────────────────────

**APPEARANCES:**                        **OF COUNSEL:**

Lachman, Gorton Law Firm                PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main Street
Endicott, New York 13761-0089
Attorney for plaintiff

Social Security Administration          CHRISTOPHER LEWIS POTTER, ESQ.
Office of Regional General Counsel,
Region II
26 Federal Plaza, Rm. 3904
New York, New York 10278
Attorney for defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**MEMORANDUM-DECISION AND ORDER**[1]

        Plaintiff Michael B.[2] brings this action pursuant to 42 U.S.C. § 405(g) seeking

review of a decision by the Commissioner of Social Security ("the Commissioner"),

─────────────────

[1]  The parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. §
636(c), FED. R. CIV. P. 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18.  See Dkt. No. 7.

[2]  In accordance with guidance from the Committee on Court Administration and Case Management of
the Judicial Conference of the United States, which was adopted by the Northern District of New York in
2018 to better protect personal and medical information of non-governmental parties, this Memorandum-
Decision and Order will identify plaintiff by his first name and last initial.

which denied his application for supplemental security income benefits under Title XVI of the Social Security Act and disability insurance benefits under Title II of the Social Security Act.  See Dkt. No. 1.  Plaintiff moves for a determination that he is disabled, or in the alternative, reversal and remand for further administrative proceedings, while the Commissioner cross moves for a judgment on the pleadings.  See Dkt. Nos. 9, 11.  For the reasons that follow, the determination of the Commissioner is reversed, the Commissioner's motion is denied, and plaintiff's motion for judgment on the pleadings is granted to the extent that is seeks reversal and remand for further administrative proceedings.

## I.  Background[3]

## A.  Factual Background

Plaintiff was born on August 1, 1974 and completed one year of college.  See T. 34, 35.  Plaintiff's employment history consists of having worked as an automobile mechanic or service manager for various employers since the age of eighteen.  See T. 35, 41, see T. 136-37 (certified earnings record), 138-41 (detailed earnings record). Plaintiff was terminated from his last job in 2012 due to the symptoms that he was experiencing as a result of his conditions.  See T. 35-36, 210; but see Dkt. No. 9-2 at 44 (noting that plaintiff reported having been fired due to tardiness). According to plaintiff:

> I was basically getting dizzy spells, falling to my knees, vomiting in some cases.  Very embarrassing and eventually it became to where my boss worked with me because he

---

[3]  References to the administrative transcript will be cited as "T" and page citations will be to the page numbers in the bottom right-hand corner of the administrative transcript.  See Dkt. No. 8.  All other citations will be to the pagination generated by the Court's electronic filing system, CM/ECF, and will reference the page numbers that are utilized in the document header, rather than the pagination of the original documents.

> knew it was a medical condition.  You know, at the time. But I couldn't. My attendance wasn't great after that.  I couldn't be depended on, so he had to let me go.  It was getting busy for him.  He needed somebody to depend on and I couldn't be there.

T. 36; see also T. 214 ("I watched first-hand the vertigo attacks on many occasions; often as often twice per week. He would become incapacitated and would have to be driven home myself and fellow employees"), T. 216 (statement of employer).

At the hearing, plaintiff testified that his conditions forced him to move in with his parents.  See T. 37; see also T. 215 (statement from plaintiff's father). Plaintiff testified that on the days that he was able, he "help[s] [his] mom along" by vacuuming, taking out the garbage, and cleaning the dishes.  T. 38, 215; but see T. Dkt No. 9-2 at 12 ("cleaned out his grandmother's house"), 24 (noting that plaintiff had been soldering).

### B.  Relevant Medical Background

#### 1.  Dr. Gary D. Dean[4]

On September 23, 2015, plaintiff presented to the office of Dr. Gary D. Dean to establish care and due to, inter alia, complaints of "dizziness and hearing loss" over the course of the prior year.  See Dkt. No. 9-2 at 45-47; see also T. 178 (noting that plaintiff stated that "he had hearing loss in 2012-2014, but never went to the doctor").  As the Commissioner observes, see Dkt. No. 11 at 12-13, plaintiff was not actually examined by Dr. Dean on that date; instead, he was examined by Nurse Practitioner Tayyebeh Nahid Borogerdi.  See Dkt. No. 9-2 at 45-47.  In any event, as a result of that visit,

---

[4]  The outline that follows reflects all of the medical records currently before the Court.  See T. 245, 246, 256, Dkt. Nos. 9-1, 92.  The undersigned notes that only the November 28, 2017 and May 8, 2018 statements of Dr. Dean were before ALJ Draper, see T. 245-46, 256, with all remaining records having been submitted to the Appeals Council.

plaintiff was referred to an otolaryngologist, an audiologist, and to vestibular physical

therapy.  See Dkt. No. 9-2 at 45-47; see also T. 231-33 (initial evaluation notes, dated

June 30, 2016).

When plaintiff was examined at a May 19, 2016 office visit, Dr. Dean observed

that plaintiff was "doing poorly" and noted that plaintiff appeared to have Ménière's

disease with associated chronic tinnitus, hearing loss, and vertigo.[5]  See Dkt. No. 9-2 at

31.  Plaintiff reported that he was experiencing worsening vertigo, hearing loss, tinnitus,

and nausea.  See Dkt. No. 9-2 at 31.

On November 6, 2017, plaintiff was seen for an office visit where he reported to

Dr. Dean that "[h]e was doing better" and "he thought he might be able to get back to

work[.]"  Dkt. No. 9-2 at 6.  Plaintiff reported that one of his treating providers believed

that he would be able to go back to work, but Dr. Dean opined that plaintiff would be

unable to "work more than part-time[.]"  Dkt. No. 9-2 at 6.  After that office visit, Dr. Dean

drafted a letter in which he stated:

> I am writing this letter on [plaintiff's] behalf because he
> suffers from severe [Ménière's] disease, which causes
> severe vertigo, nausea and vomiting at times. . . . [A]lthough
> he has had some improvement, he is far from functional in
> an eight-hour work day.  I think he would struggle to do half
> that five days a week.  He also suffers from severe anxiety,
> which he is also being treated for.  I think both of these long-
> term health problems make it, most likely, impossible for him
> to have any kind of gainful, long-term employment.

---

[5]  Ménière's disease is "an inner-ear condition 'characterized clinically by vertigo, nausea, vomiting, tinnitus, and progressive hearing loss due to hydrops of the lymphatic duct.'"  Kruppbacher v. Astrue, No. 04-CV-4150 (WHP/HBP), 2010 WL 5779484, at *1 n.2 (S.D.N.Y. Apr. 16, 2010) (subsequent history omitted) (quoting STEDMAN'S MEDICAL DICTIONARY (27th ed. 2000)); see also Mineo v. Colvin, No. 12-CV-410, 2014 WL 4773955, at *1 n.2  (W.D.N.Y. Sept. 24, 2014) (noting that Ménière's disease "is an abnormal increase in the volume of cochlear fluid (endolymph) in the inner ear characterized by symptoms of episodic vertigo, nausea, vomiting, tinnitus, the sensation of fullness or ressure, and progressive hearing loss.")

T. 246 (dated November 28, 2017).  Several months later, Dr. Dean provided plaintiff

with an additional statement—ostensibly for plaintiff's hearing before the

Commissioner—which stated:

> Plaintiff suffers from multiple significant medical problems.
> His most serious medical problem is his chronic [Ménière's]
> disease, which causes uncontrolled dizziness, nausea,
> inability to function at times and it is a chronic problem.  He
> has been referred to Syracuse for treatment.  He has had
> some improvement, but is still significantly disabled and
> unable to function in a work environment because of this.
> His other major threat to his health is his chronic anxiety
> disorder, which he does take medication for, and this does
> help control his anxiety, but not completely.  His current
> medications include clonazepam 0.5 mg, famotidine 20 mg
> and Flonase for his allergies.

T. 245 (dated May 8, 2018), repeated at T. 256.

On June 12, 2018, plaintiff presented for a re-evaluation and noted that he was

still experiencing vertigo "on and off . . . and for this reason [has not] been able to work."

Dkt. No. 9-2 at 4.  When plaintiff returned to the office on October 11, 2018, he indicated

that his Ménière's disease had been "worse[.]"  Dkt. No. 9-2 at 1.  Dr. Dean noted that

plaintiff was seeing a different doctor to manage that condition.  Dkt. No. 9-2 at 2.

On November 8, 2018, Dr. Dean provided a third statement, which indicated:

> I am writing this letter on behalf of plaintiff . . . He does suffer
> from fairly significant medical problems [including] chronic
> [Ménière's] disease which results in a chronic vertigo and
> dizziness sensation gradual loss of hearing[. H]e has seen
> multiple ENTs most recently he's been followed by Syracuse
> Dr. Wanamaker for treatment.  This is his most disabling
> condition and really does not allow him to function in the
> work environment.

Dkt. No. 9-1 at 1.  In addition to this statement, Dr. Dean also completed a

questionnaire in which he opined that plaintiff would be off-task more than 33% of his

day, absent more than four days per month, and that he would be expected to have "good days and bad days."[6]  Dkt. No. 9-1 at 2-3.  Dr. Dean noted that plaintiff's condition was a "long-standing issue [for] 10+ years."  Dkt. No. 9-1 at 3.

### 2.  Dr. Cesar Dionisio, M.D.

Following a referral from Dr. Dean, plaintiff was examined by Dr. Cesar Dionisio, an otolaryngologist, who performed an audiological evaluation on December 9, 2015. See T. 217.  That evaluation revealed that plaintiff was exhibiting mild right-sided hearing loss and moderate-to-severe left-sided hearing loss.  See 217.  There was no evidence of an acoustic neurorna.  See T. 218-222, 229.  On June 19, 2016, Dr. Dionisio completed a questionnaire in which he indicated that he could not "provide a medical opinion regarding [plaintiff's] ability to do work related activities."  T. 228-30.

### 3.  Consultative Examiner Gilbert Jenouri, M.D.

On May 11, 2016, plaintiff underwent an examination with consultative examiner Gilbert Jenouri, M.D.  See T.  223-227.  Plaintiff reported to Dr. Jenouri that he had been experiencing hearing difficulties—particularly in his left ear—since 2014, along with difficulties with equilibrium, balance, frequent dizziness, vertigo, and gait imbalance.  See T. 223.  With respect to his activities of daily living, plaintiff reported that although he did not cook, he did partake in cleaning, laundry, shopping, childcare, showering, and dressing.  See T. 223.  Following a largely normal physical

---

[6]  Although this questionnaire contains a handwritten date of "11-8-17," the undersigned agrees with the Commissioner that this date appears to be erroneous and that it was, in all likelihood, completed on November 8, 2018, which is date of the accompanying letter.  See Dkt. No. 9-1.

examination—in which plaintiff exhibited a normal gait, displayed no difficulty walking on his heels and toes, squatting, changing clothes, rising from a chair, or getting on or off an examination table—Dr. Jenouri opined that plaintiff "is restricted from activity requiring fine hearing acuity."  T. 226.

### 4.  Dr. Hayes H. Wanamaker, M.D.

Although plaintiff began treating with Dr. Hayes H. Wanamaker M.D., an otolaryngologist, in December 2016, only limited treatment records are contained in the administrative transcript.  See T. 190, 234-244.[7]  In late 2017, plaintiff underwent a series of three left intratympanic steroid injections, with each accompanied by an audiogram.  See T. 241-43; see also T. 237-38 (audiograms).  As a result of those injections, plaintiff reported decreased symptomology, including less frequent and less severe spells of vertigo.  See T. 241-43.  When plaintiff returned to the office on October 9, 2017, Dr. Wanamaker observed that plaintiff's gait and tandem walking were intact and that his Romberg test was negative.[8]  See T. 241.

Plaintiff returned to the office on December 14, 2017 and indicated that he felt "like things [were] starting to deteriorate[.]"  T. 240; see also T. 235 (audiogram).  At that visit, Dr. Wanamaker opined that plaintiff's complaints were "probably most consistent with left [Ménière's] disease."  T. 240; see also id. ("Symptoms probably best

---

[7]  According to a fax cover sheet, only office visit notes after July 27, 2017 were provided.  See T. 244.  It appears that ALJ Draper may have incorrectly assumed that she had the complete records from Dr. Wanamaker's office.  See T. 31.

[8]  The Romberg's test is a test of balance that is performed "with [the] feet close together and eye[s] closed."  Piper on behalf of Piper v. Saul, No. 18-CV-3249, 2020 WL 1670190, at *2 (C.D. Ill. Feb. 4, 2020) (subsequent history omitted) (citing DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1715 (32nd ed. 2012)).

characterized as [Ménière's] disease.").  Although plaintiff was supposed to return to the office in two weeks for a follow-up injection, he did not return until March 22, 2018 due to ear and sinus infections.  See T. 239; see also T. 234 (audiogram).  Plaintiff noted that there was "no question in his mind that overall his quality of life is improved," but he expressed that he did not feel his symptoms were "quite at the point yet where he would be pleased because he still has enough days that he is afraid it would be a problem."  T. 239.

### C.  Procedural Background

On March 18, 2016, plaintiff protectively filed an application for disability insurance benefits under Title II of the Social Security Act and an application for supplemental security income under Title XVI of the Social Security Act.  See T. 123-128, 129-135.  Each application alleged a disability onset date of December 1, 2012.  See T. 123, 129.  Both applications were denied on June 1, 2016 and plaintiff requested a hearing on July 21, 2016.  See T. 67-72, 73-78, 79-80.  Although plaintiff was informed of the right to representation at the hearing, plaintiff elected to appear and testify pro se before Administrative Law Judge ("ALJ") Jo Ann L. Draper on May 22, 2018.  See T. 27-47.

On July 6, 2018, ALJ Draper rendered an unfavorable decision and plaintiff appealed.  See T. 10-26; see also T. 8-9 (acknowledging plaintiff's request for review).  At this phase, plaintiff retained counsel and submitted additional medical records to the Appeals Council.  See Dkt. Nos. 9-1 (letter, questionnaire, and medication list from Dr.

Dean), 9-2 (clinical records from Dr. Dean).  The Appeals Council denied plaintiff's

request for review on May 13, 2019, stating:

> You submitted medical records from [Dr. Dean] dated
> September 23, 2015 [through] June 2018 . . . .  We find this
> evidence does not show a reasonable probability that it
> would change the outcome of the decision. . . .

> You submitted medical records from [Dr. Dean] . . .
> and a medication list dated October 11, 2018 . . . .  The
> Administrative Law Judge decided your case through July 6,
> 2018.  This additional evidence does not relate to the period
> at issue.

T. 2.  This action was timely commenced on July 1, 2019.  See Dkt. No. 1.


### D.  The ALJ's Decision

Applying the five-step sequential analysis, the ALJ first determined that plaintiff

met the insured status requirements of the Social Security Act through December 31,

2014 and that he had not engaged in substantial gainful activity since December 1,

2012.  See T. 16.  Next, ALJ Draper noted that through the date last insured of

December 31, 2014, there were no medical signs or laboratory findings to substantiate

the existence of a medically determinable impairment inasmuch as plaintiff did not seek

treatment until October 1, 2015.  See T. 16.  ALJ Draper concluded that on the

protected filing date of March 18, 2016, plaintiff suffers from several severe

impairments—including Ménière's disease and left-side hearing loss—but that his

complaints of anxiety, allergies, and reflux were not medically determinable.  See T. 16-

17.

After specifically considering Listing 2.07 (disturbance of labyrinthine-vestibular function)[9] and Listing 2.10 (hearing loss not treated with cochlear implantation), ALJ Draper determined that plaintiff does not have an impairment, or combination of impairments, that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See T. 17.  Proceeding to the next step, the ALJ held plaintiff retains a residual functional capacity ("RFC") as follows:

> to lift and carry 20 pounds occasionally and10 pounds frequently, to stand and/or walk 6 hours per day, and to sit 6 hours per day.  [Plaintiff] can occasionally climb, balance, stoop, kneel, crouch, and crawl but can never climb ropes, ladders, or scaffolds. [Plaintiff] should have no exposure to hazardous conditions such as working around heights or moving machinery, including vehicles, and should have no exposure to noise levels above Level 3 as defined by the D.O.T.  [Plaintiff] should have no more than occasional exposure to extremes in temperatures such as heat and cold, humidity, or wetness.

T. 17-20.

In arriving at this RFC, ALJ Draper afforded Dr. Dean's opinion "little weight," noting that although Dr. Dean was plaintiff's primary care provider, Dr. Dean was not a specialist and plaintiff did not begin treating with him until 2016, nearly four years after his symptoms started.  See T. 19  In addition, ALJ Draper observed that plaintiff's "file

---

[9]  Specifically, with respect to Listing 2.07, in order to be considered disabled as a result of Ménière's disease, a plaintiff's hearing loss must be characterized by a history of frequent attacks of balance disturbance, tinnitus, and progressive loss of hearing, with both A and B:

> A.    Disturbed function of vestibular labyrinth demonstrated by caloric or other vestibular tests; and
> B.    Hearing loss established by audiometry.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 2.07 (" § 2.07").  Although plaintiff's left-sided hearing loss was established by audiometry, there are is nothing in the administrative transcript that shows a disturbed function of vestibular labyrinth demonstrated by caloric or other vestibular tests.  See T. 17.

contains no treatment records from Dr. Dean to support his opinions," there was "no evidence of any consistently abnormal clinical findings to support the opinions," and that Dr. Dean's opinion were "also inconsistent with the [plaintiff's significant improvement with treatment and his ability to carry out many activities[.]"  T. 19.  ALJ Draper did not expressly discuss, or assign a specific weight to the opinion of Dr. Jenouri.  See T. 17-20.

Continuing with the analysis, ALJ Draper next determined that plaintiff was unable to perform his past relevant work, which could be classified as an automobile mechanic, D.O.T. Code 620.261-010, or service manager, D.O.T. Code 185.167-058. See T. 20-21.  At step five, the ALJ concluded that—when considering his age, education, work experience, and his RFC—plaintiff could still perform a significant number of jobs in the national economy.  See T. 20-21.  Based upon the testimony of a vocational expert, this included: (1) cashier II, D.O.T. Code 211.462-010 (2) mail clerk (non-postal), D.O.T. Code 209.687-026; (3) office helper, D.O.T. Code 239.567-010; and (4) shelving clerk, D.O.T. Code 249.687-014.  See T. 20-21.  ALJ Draper ultimately determined that plaintiff has not been under a disability, as defined in the Social Security Act, "from December 1, 2012, through the date of [the] decision."  T. 25 (citing 20 C.F.R. § 404.1520(g), 416.920(g)).

### E.  The Arguments of the Parties

In support of reversal, plaintiff advances multiple arguments regarding purported errors made by both the ALJ and the Appeals Council.  See Dkt. Nos. 9, 12.  With respect to the Appeals Council, plaintiff argues that (1) the Appeals Council failed to

properly consider the opinion of Dr. Dean under the treating physician rule; (2) there is a reasonable probability the new evidence submitted to the Appeals Council would change the outcome; and (3) the Appeals Council improperly determined that the new evidence did not pertain to the relevant period.  See Dkt. No. 9 at 9-16.  In response, the Commissioner argues that (1) any failure to weigh Dr. Dean's conclusory opinion is harmless error because that statement was not significantly more favorable than the two prior statements that were considered at the hearing level; and (2) there is no reasonable probability the new evidence submitted to the Appeals Council would have changed the outcome.  See Dkt. No. 11 at 4-13.

With respect to the ALJ, plaintiff argues that (1) that the ALJ formed the RFC without any supporting medical opinion; (2) the ALJ failed to weigh the opinion of Dr. Jenouri; (3) the ALJ placed improper reliance on plaintiff's activities of daily living; (4) the ALJ failed to assess any limitations with respect to plaintiff's time off task and attendance; and (5) the ALJ's step five determination is not supported by substantial evidence.  See Dkt. No. 9 at 16-20.  In response, the Commissioner argues that (1) the ALJ provided the requisite "logical bridge" between the medical evidence and the RFC; (2) plaintiff was not prejudiced by any failure to expressly weight Dr. Jenouri's opinion because the ALJ's decision was consistent with the opinion that plaintiff could not perform activity requiring fine hearing acuity; (3) it was proper for the ALJ to consider plaintiff's activities of daily living as one factor supporting the finding of non-disability; (4) plaintiff has failed to demonstrate any error in the ALJ's RFC, which did not incorporate limitations into plaintiff's time off-task and attendance; and (5) the ALJ did not commit an error at step five.  See Dkt. No. 11 at 14-20.

## II.  Legal Standards

### A.  Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled.  See 42 U.S.C. § 405(g); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the determination of the Commissioner will only be reversed if the correct legal standards were not applied, or the determination was not supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).

Substantial evidence is "more than a mere scintilla," which means that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)).  Under this standard, "once an ALJ finds facts, we can reject those facts 'only if a reasonable factfinder would have to conclude otherwise.'"  Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (quoting Warren v. Shalala, 29 F.3d 1287, 1290 (8th Cir.1994)).  Substantial evidence is "a very deferential standard of review-even more so than the 'clearly erroneous' standard."  Brault, 683 F.3d at 448 (quoting Dickinson v. Zurko, 527 U.S. 150, 153 (1999)).

Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence.  See Martone v. Apfel, 70 F.

Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson, 817 F.2d at 986).  However, if the correct legal standards were applied—and the ALJ's finding is supported by substantial evidence—the determination must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

## B.  Determination of Disability[10]

"Every individual who is under a disability shall be entitled to a disability . . . benefit[.]"  42 U.S.C. § 423(a)(1).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  Id. § 423(d)(1)(A).  A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience.  See id. § 423(d)(2)(A).  Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques."  Id. § 423(d)(3).  Additionally, the severity of the impairment is "based on objective medical facts, diagnoses[,] or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience."  Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3

---

[10]  The analysis of supplemental security income benefits under Title XVI parallels, in relevant part, the statutory and regulatory framework applicable to disability insurance benefits claims under Title II.  See Franki L. v. Comm'r of Soc. Sec., No. 6:18-CV-741 (GLS), 2019 WL 4736469, at *1 n.2 (N.D.N.Y. Sept. 27, 2019) (citing Barnhart v. Thomas, 540 U.S. 20, 24 (2003)).

(S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis to determine whether an individual is entitled to disability benefits.  See 20 C.F.R. §§ 404.1520, 416.920.  In particular,

> First, the [Commissioner] considers whether the [plaintiff] is currently engaged in substantial gainful activity.
>
> If [the plaintiff] is not, the [Commissioner] next considers whether [he or she] has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the [plaintiff] suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the [plaintiff] has an impairment which is listed in Appendix 1 of the regulations.  If the [plaintiff] has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a [plaintiff] who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.
>
> Assuming the [plaintiff] does not have a listed impairment, the fourth inquiry is whether, despite the [plaintiff]'s severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the [plaintiff] is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the [plaintiff] could perform.

Berry, 675 F.2d at 467 (2d Cir. 1982) (spacing added).  At the first four steps of the analysis, the plaintiff bears the initial burden of proof.  See DeChirico v. Callahan, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing Berry, 675 F.2d at 467).  If the inquiry progresses to the fifth step, then the burden shifts to the Commissioner to prove that the plaintiff is

still able to engage in gainful employment somewhere.  See DeChirico, 134 F.3d at 1180 (citing Berry, 675 F.2d at 467).

### C.  The Treating Physician Rule

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. §§ 404.1527(c), 416.927(c).  "'[T]he opinion of a [plaintiff's] treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'"  Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015) (quoting Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008)).  However, "the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts."  Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004).

In deciding how much weight to afford the opinion of a treating physician, the ALJ must explicitly consider, inter alia, "'(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'"  Greek, 802 F.3d at 375 (quoting Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013)).  However, where the ALJ's reasoning and adherence to the regulation is clear, and it is obvious that the "substance of the treating physician rule was not traversed," no "slavish recitation of each and every factor" of 20 C.F.R. §§ 404.1527(c) and 416.927(c) is required.  Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir.

2013) (summary order) (citing Halloran, 362 F.3d at 31-32). The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the plaintiff replacing the consideration of the treatment relationship between the source and the plaintiff. See 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

In Estrella v. Berryhill, 925 F.3d 90 (2d Cir. 2019), the Second Circuit has more recently addressed the Commissioner's failure to "explicitly" apply the regulatory factors set out in Burgess when assessing the weight to accord to a treating physician's opinion. There, the Court explained that such a failure is a procedural error and remand may be appropriate "[i]f 'the Commissioner has not [otherwise] provided 'good reasons' [for its weight assignment][.]' " Id. 96 (alteration in original) (quoting Halloran, 362 F.3d at 32). The Court clarified, "[i]f, however, 'a searching review of the record' assures us 'that the substance of the treating physician rule was not traversed,' we will affirm." Estrella, 925 F.3d at 96 (quoting Halloran, 362 F.3d at 32). The Court also noted the question of "whether 'a searching review of the record . . . assure[s us] . . . that the substance of the . . . rule was not traversed'" is "whether the record otherwise provides 'good reasons' for assigning 'little weight' to [the treating psychiatrist's] opinion." Estrella, 925 F.3d at 96

### III.  Legal Analysis

### A.  Appeals Council Review

"A request for Appeals Council review of an ALJ's decision is the fourth and final stage in the administrative process of adjudicating claims for benefits under the Social

Security Act."[11]   Perez v. Chater, 77 F.3d 41, 45 (2d Cir.1996).  At this step, the "Social

Security regulations expressly authorize a [plaintiff] to submit new and material

evidence to the Appeals Council when requesting review of an ALJ's decision."  Id.

(citing 20 C.F.R. §§ 404.970(b), 416.1470(b)).  "'[N]ew evidence submitted to the

Appeals Council following the ALJ's decision becomes part of the administrative record

for judicial review when the Appeals Council denies review of the ALJ's decision.'"

Lesterhuis v. Colvin, 805 F.3d 83, 87 (2d Cir. 2015) (quoting Perez, 77 F.3d at 45).

      "'[W]hen [a plaintiff] submit[s] to the Appeals Council treating-physician opinions

on the nature and severity of their impairments during the relevant period of disability,

'the treating physician rule applies, and the Appeals Council must give good reasons for

the weight accorded to' that opinion.'"  Kurten v. Comm'r of Soc. Sec., No. 18-CV-0174

(JWF), 2019 WL 4643606, at *3 (W.D.N.Y. Sept. 24, 2019) (quoting Djuzo v. Colvin, No.

5:13-CV-272 (GLS/ESH), 2014 WL 5823104, at *3 (N.D.N.Y. Nov. 7, 2014)).  Notably, it

is not sufficient "for the Appeals Council to merely acknowledge that they reviewed new

evidence from a treating physician without providing such reasoning."  Seifried ex rel.

A.A.B. v. Comm'r of Soc. Sec., No. 6:13-CV0347 (LEK/TWD), 2014 WL 4828191, at *4

(N.D.N.Y. Sept. 29, 2014) (citing Shrack v. Astrue, 608 F. Supp. 2d 297, 302 (D.Conn.

2009)).  As a result, "[r]emand may be appropriate where the Appeals Council fails to

discuss a newly submitted treating physician's opinion or 'fails to provide the type of

explanation required by the treating physician rule when denying [the p]laintiff's request

for review.'"  Samantha D. v. Comm'r of Soc. Sec., No. 3:18-CV-1280 (ATB), 2020 WL

1163890, at *4 (N.D.N.Y. Mar. 11, 2020) (quoting Djuzo, 2014 WL 5823104, at *4-*5);

---

[11]  "The first three steps are the initial determination, reconsideration, and a hearing before an ALJ."
Perez, 77 F.3d at 45 n.3 (citing 20 C.F.R. §§ 404.900, 416.1400).

see Amanda L. C. v. Comm'r of Soc. Sec., No. 3:19-CV-0817 (GTS), 2020 WL 4783169, at *6 (N.D.N.Y. Aug. 18, 2020) (observing that "remand is only appropriate where there is a 'reasonable possibility' that this evidence would have influenced the ALJ to decide the disability determination differently").

In this case, following the ALJ's decision—and plaintiff's retention of counsel—plaintiff submitted forty-seven pages of office visit notes from Dr. Dean and N.P. Borogerdi dated between September 23, 2015 through October 1, 2018, see Dkt. No. 9-2, in addition to Dr. Dean's letter and questionnaire, dated November 8, 2018 and a medication list, dated October 11, 2018.  See  Dkt. Nos. 9-1, 11-1.  In concluding that there was no basis to disturb ALJ Draper's determination, the Appeals Council summarily held that the office visit notes failed to "show a reasonable probability that it would change the outcome of the decision."  T. 2 (citing Dkt. No. 9-2).  In addition, the Appeals Council concluded that the letter, questionnaire, and medication list did "not relate to the period at issue."  T. 2 (citing Dkt. Nos. 9-1, 11-1).  Despite the Commissioner's arguments to the contrary, these are errors that cannot be regarded as harmless.

First, with respect to the office visit notes, the Appeals Council was obligated to explain what weight—if any—it was affording to Dr. Dean's opinions and provide an explanation for its decision.  The Appeals Council not only failed to provide "good reasons" for disregarding the opinion of a treating physician, it did not provide any reasons at all.  This was in error.  The boilerplate statement that the additional evidence presented by plaintiff failed to "show a reasonable probability that it would change the outcome of the decision[,]" T. 2 (citing Dkt. No. 9-2), wholly fails to indicate whether the

Appeals Council applied the treating physician rule correctly, or even at all, which frustrates any meaningful review by the Court.  It also provides plaintiff with no material information to explain why the opinion of his treating physician was summarily rejected by the Appeals Council.  See Stadler v. Barnhart, 464 F.Supp.2d 183, 188 (W.D.N.Y. 2006) (concluding that the Appeals Council erred by "fail[ing] to follow the requirements of the Commissioner's regulation in summarily concluding, without 'good reasons' stated, that the new evidence submitted by plaintiff's counsel to it was insufficient to disturb the ALJ's determination[.]" (quoting Rice v. Barnhart, No. 03-CV-6222, 2005 WL 3555512, at *13 (W.D.N.Y. Dec. 22, 2005)); see also Davis v. Saul, No. 19 CIV. 02974 (JCM), 2020 WL 2094096, at *12 (S.D.N.Y. May 1, 2020) ("This threadbare statement lacks any reasoning that sheds light on 'why the Appeals Council found the proffered evidence immaterial,' and thus 'deprives the Court of its ability to determine whether the Commissioner's decision is supported by substantial evidence.'"); Kurten v. Comm'r of Soc. Sec., No. 18-CV-0174-JWF, 2019 WL 4643606, at *4 (W.D.N.Y. Sept. 24, 2019) (noting that the "boilerplate denial of the new medical source statement from [a doctor] failed to satisfy the Commissioner's own regulations requiring that it give good reasons for rejecting a treating source opinion.").  The law is clear that the Commissioner must— acting either through the Appeals Council or the ALJ—properly evaluate a treating physician's opinion and provide good reasons for that evaluation.

Second, the Appeals Council improperly rejected that remaining evidence as "not relat[ing] to the period at issue."  T. 2 (citing Dkt. Nos. 9-1, 11-1).  Although it is true that the letter, questionnaire, and medication list were generated after ALJ Draper's decision, it "cannot be deemed irrelevant solely because of timing."  Newbury v. Astrue,

321 F. App'x 16, 18 n. 2 (2d Cir. 2009) (summary order) (citing Pollard v. Halter, 377 F.3d 183, 193 (2d Cir. 2004)).  The undersigned finds that it is unlikely that Dr. Dean's letter and questionnaire expresses no opinion about plaintiff's functioning prior to the date of the ALJ's decision when the questionnaire expressly states that plaintiff's condition was a "long-standing issue [for] 10+ years."  Dkt. No. 9-1 at 3; see, e.g., Pollard, 377 F.3d at 193 (noting that subsequent evidence of the severity of a plaintiff's condition may demonstrate that "during the relevant time period, [the plaintiff's] condition was far more serious than previously thought."); Amanda L. C., 2020 WL 4783169, at *6.  Thus, the evidence presented to the Appeals Council is "potentially material," and must be reviewed on remand.  Lugo v. Berryhill, No. 18-CV-2179 (JGK/RWL), 2019 WL 4418649, at *16 (S.D.N.Y. May 8, 2019), report and recommendation adopted, 390 F. Supp. 3d 453 (S.D.N.Y. 2019).

More significantly, these errors were compounded by the fact that one of the reasons that ALJ Draper assigned Dr. Dean's opinion "little weight" was because plaintiff's "file contains no treatment records from Dr. Dean to support his opinions."  T. 19.  Setting aside the obvious "gap" in the record that the ALJ was duty-bound to fill, plaintiff nonetheless supplemented the record by providing the precise evidence that was found to be lacking.  Thus, under the circumstances of this case, it cannot be said that the totality of this new evidence "was largely identical" to the two prior letters that were before the ALJ at the hearing.  Zabala v. Astrue, 595 F.3d 402, 410 (2d Cir. 2010).

In addition, the undersigned is unable to conclude with certainty that the additional evidence does not show a reasonable probability that it would change the outcome of the decision.  See 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5) (the Appeals

Council will review a case if, inter alia, "there is a reasonable probability that the additional evidence would change the outcome of the [challenged ALJ] decision"). The Appeals Council was presented with a treating physician opinion that would undermine the RFC in significant ways if it were be accepted. In particular, Dr. Dean opined that plaintiff would be expected to be absent more than four days per month. See Dkt. No. 9-1 at 3. If this statement were credited, it would preclude full-time employment based on the testimony of the vocational expert. See T. 44 ("[S]o this individual again could not sustain full-time competitive employment . They might get the job . They couldn't keep it."). Although Dr. Dean previously opined in one letter that plaintiff "is far from functional in an eight-hour work day" and "would struggle to do half that five days a week," see T. 246, this opinion was expressly rejected by the ALJ due to the lack of treatment records. As a result, if Dr. Dean's full records were before the ALJ— assuming the ALJ gave it some deference as a treating physician's opinion—there is a reasonable probability that this new evidence could have led to a different outcome. On this record, the court cannot conclude with any confidence that plaintiff's claim would have been decided the same way in the absence of these errors.

Because the Appeals Council did not give the additional evidence controlling weight—or even explain why it did not do so—pursuant to the Burgess factors, the proper course is to remand the matter to the Commissioner for reconsideration in light of the new evidence to "provide the type of explanation required under the treating physician rule." Farina v. Barnhart, No. 04-CV-1299 (JG), 2005 WL 91308, at *5 (E.D.N.Y. Jan. 18, 2005); see Flagg v. Colvin, No. 5:12-CV-0644 (GTS/VEB), 2013 WL 4504454, at 7 (N.D.N.Y. Aug. 22, 2013) (explaining that remand for reconsideration of

new medical evidence is required where the Appeals Council's failure to provide good reasons for discounting a treating physician's opinion frustrates meaningful review.).

To be sure, it is entirely possible the Commissioner could still reach the same conclusion after weighing the additional evidence.  The Commissioner suggests that summary dismissal of Dr. Dean's assessment was justifiable because the opinion was not supported by clinical findings and was based primarily on plaintiff's subjective complaints.  See Dkt. No. 11 at 6-7.  Even if true, this is inadequate.  The Appeals Council, like the ALJ, has an affirmative duty to develop the record.  See Anderson v. Astrue, No. 07-CV-4969, 2009 WL 2824584, at * 15 (E.D.N.Y. Aug.28, 2009); Joe v. Apfel, No. 97-CV-772, 1998 WL 683771 at *5 (W.D.N.Y.1998) (remanding because the "Commissioner erred in failing to develop the record at the Appeals Council level of review"); see also Valerio v. Comm'r of Social Sec., No. 08-CV-4253, 2009 WL 2424211, at *11 (E.D.N.Y. Aug.6, 2009) ("Given the ALJ's duty to develop the record sua sponte, the Appeals Council may not reject the treating physician's conclusions based solely on a lack of clear medical evidence or inconsistency without first attempting to fill the gaps in the administrative record.").

The errors by the Appeals Council deprived plaintiff of the substantial right to have his disability determination made according to the correct legal principles and based on substantial evidence and remand is required on this ground.  Because the Court has determined that remand is warranted for proper consideration of the additional evidence submitted by Dr. Dean, as well as further development of the record, the Court declines to address the remaining arguments raised by the parties.  Upon remand, the ALJ may consider these arguments as it considers appropriate.

## IV.  Conclusion

**WHEREFORE**, for the reasons stated above, it is hereby:

**ORDERED**, that plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **GRANTED IN PART**; and it is further

**ORDERED**, that the Commissioner's motion for judgment on the pleadings (Dkt. No. 11) is **DENIED**; and it is further

**ORDERED** and the matter is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g), to the Commissioner for further proceedings consistent with this Memorandum-Decision and Order.

**IT IS SO ORDERED.**

Dated: September 4, 2020
      Albany, New York

Christian F. Hummel
U.S. Magistrate Judge